Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/28/2020 09:09 AM CDT

State of Nebraska, appellee, v.
James S. Price, appellant.
___ N.W.2d ___

Filed June 5, 2020.    No. S-19-192.

1. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.
2. **Trial: Prosecuting Attorneys: Appeal and Error.** When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, an appellate court will review the record only for plain error.
3. **Appeal and Error.** An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.
4. **Motions for New Trial: Appeal and Error.** The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.
5. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

6. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

7. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

8. **Appeal and Error.** Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication.

9. **Actions: Appeal and Error.** The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution.

10. ____: ____. On appeal, the law-of-the-case doctrine is a rule of practice that operates to direct an appellate court's discretion, not to limit its power.

11. ____: ____. The law-of-the-case doctrine does not apply if considerations of substantial justice suggest a reexamination of the issue is warranted. But matters previously addressed in an appellate court are not reconsidered unless the petitioner presents materially and substantially different facts.

12. **Motions for Mistrial: Prosecuting Attorneys: Waiver: Appeal and Error.** A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.

13. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

14. **Trial: Prosecuting Attorneys: Juries.** Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.

15. ____: ____: ____. A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

16. **Trial: Prosecuting Attorneys.** In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

17. **Criminal Law: Evidence: Appeal and Error.** When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

18. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## NATURE OF CASE
James S. Price appeals his convictions and sentences in the district court for Lancaster County for aiding and abetting robbery and for aiding and abetting first degree assault. Price was convicted in his second jury trial after his first trial ended in a deadlocked jury and the court declared a mistrial.

Price claims on appeal that the court erred in the first trial when it failed to inquire of the jury whether it was deadlocked on each count and when it overruled the plea in bar he filed after the declaration of a mistrial and before the second trial. We note with regard to these two claims that Price unsuccessfully appealed to the Nebraska Court of Appeals, which rejected his assignments of error regarding polling of jurors and overruling the plea in bar. *State v. Price*, No. A-17-565, 2018 WL 718501 (Neb. App. Feb. 6, 2018) (petition for further review denied).

Price further claims on appeal that in the second trial, (1) the State committed prosecutorial misconduct by making improper statements during closing argument, (2) the court abused its discretion when it denied his motion for a new trial, (3) counsel was ineffective, (4) there was not sufficient evidence to support his convictions, and (5) the court imposed excessive sentences. We affirm Price's convictions and sentences.

## STATEMENT OF FACTS

*First Trial, Declaration of*
*Mistrial, and Plea in Bar.*

Price was charged with aiding and abetting robbery and aiding and abetting first degree assault based on an incident that occurred in the early hours of October 3, 2014, in which two men were robbed and assaulted by two other men. Price was first tried on the charges in December 2016. The case was submitted to the jury at around 11 a.m. on December 9, and deliberations continued on December 12. The following facts come from the Court of Appeals' memorandum opinion in an earlier appeal in this case:

> [T]he jury, during its deliberations, sent a note to the judge on December 12, 2016, stating, "We are having difficulty with a unanimous decision. What else can we do?" The judge conferred with counsel for both sides, and upon agreement of the parties, an instruction was given to the jury urging them to review the court's prior instructions, reconsider the evidence, and to continue their discussions in order to reach a verdict; but to let the court know if a unanimous decision ultimately could not be reached.
>
> After the jury continued to deliberate for approximately another couple of hours, it sent another note to the court stating, "We have reviewed the judge's instructions numerous times. We have carefully reviewed the evidence multiple times. We have taken multiple votes and are still deadlocked." The following line of questioning then took place in open court between the court, the presiding juror, and both attorneys (with Price present):

"THE COURT: [Presiding juror], do you think any further deliberations would result in a verdict in this case?

"PRESIDING JUROR: It doesn't appear so.

"THE COURT: Okay. Well, let me ask you this. Do you think the jury is hopelessly deadlocked?

"PRESIDING JUROR: Yes. I —

"THE COURT: I'm sorry?

"PRESIDING JUROR: Yeah. I — yeah.

"THE COURT: Okay. All right.

"Any comments, [counsel for the State]?

"[Counsel for the State]: No.

"THE COURT: Any comments, [counsel for Price]?

"[Counsel for Price]: Would the Court entertain polling the jury panel as to that issue?

"THE COURT: I'm not going to poll the jury as to that issue. I think if the foreperson says they are deadlocked, I will take his word for it."

Price's counsel then objected to a mistrial in a side-bar with the court and counsel for the State, and asked for another instruction to the jury to keep deliberating. The court overruled the objection and declared a mistrial, noting the jury had been deliberating for over 8 hours. The court indicated the case would be set for further proceedings and trial would be scheduled in the next trial term commencing in February 2017.

Price filed a plea in bar on January 23, 2017, asserting that "[t]rying [Price] a second time would violate the right to be free from Double Jeopardy, Due Process, and to a Fair Trial, all as secured by the United States and Nebraska constitutions." The district court entered an order on May 18, finding that "the jury's statement that it was unable to reach a verdict amounts to 'manifest necessity' and [Price's] Plea In Bar is, therefore, overruled."

*State v. Price*, No. A-17-565, 2018 WL 718501 at *1 (Neb. App. Feb. 6, 2018).

*Price's Appeal of Denial*
*of Plea in Bar.*

Price appealed the district court's denial of his plea in bar to the Court of Appeals. He claimed that the court erred when it (1) refused his request to poll the jury individually when it indicated it was deadlocked and (2) overruled his plea in bar. The Court of Appeals rejected both assignments of error and affirmed the district court's order overruling Price's plea in bar. *State v. Price, supra*.

Regarding Price's claim that the court erred when it denied his request to poll the jury, the Court of Appeals determined that it lacked jurisdiction to consider an error arising from Price's trial because there had not yet been a final order or judgment in the trial and the only final, appealable order it had jurisdiction to review was the order overruling Price's plea in bar. The Court of Appeals determined, however, that the jury polling issue could be addressed in the context of the denial of Price's plea in bar.

Regarding the denial of the plea in bar, the Court of Appeals cited the proposition that where a mistrial is declared over a defendant's objection, he or she may be retried only if the prosecution can demonstrate a manifest necessity for the mistrial. Therefore, a second trial was allowed and the plea in bar was properly denied if there was a manifest necessity for the mistrial. The Court of Appeals rejected Price's arguments that the trial court had abused its discretion when it granted the mistrial, and it agreed with the district court's determination that the jury's statement that it was unable to reach a verdict amounted to a manifest necessity.

As part of this analysis, the Court of Appeals considered Price's argument that he was entitled to poll the jury individually regarding whether the jury was deadlocked rather than relying on the assertion of the presiding juror. The Court of Appeals stated that the statutory right to poll jurors under Neb. Rev. Stat. § 29-2024 (Reissue 2016) was limited to polling jurors regarding a verdict reached by the jury

and did not apply when a verdict had not been reached. The Court of Appeals also distinguished *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017), in which the defendant learned after a mistrial was declared that the jury had voted to acquit him on three of four charges but had reported that it was deadlocked because it thought it had to be unanimous as to all four counts. We concluded in *Combs* that because the defendant had sought the mistrial, he could not challenge the district court's failure to inquire whether the jury was deadlocked as to all counts; however, we stated that "the better practice would have been for the district court to have inquired of the jury whether it was deadlocked on every count before it granted a mistrial." 297 Neb. at 430, 900 N.W.2d at 481.

The Court of Appeals in this case determined that *Combs* did not create a new right to poll the jury individually before declaring a mistrial. The Court of Appeals also noted that there were "no facts in the record that call into question the jury being deadlocked as to all counts in the present case, as was the case in *Combs*." *State v. Price*, No. A-17-565, 2018 WL 718501 at *5 (Neb. App. Feb. 6, 2018). The Court of Appeals further noted that when Price requested to poll the jury, he did not raise an issue of whether the jury might be deadlocked as to only one of the two counts, but instead focused on polling jurors as to whether the jury was actually deadlocked. The Court of Appeals concluded that "while it would have been helpful and perhaps the 'better practice' to poll the jurors, it was not an abuse of discretion for the district court to rely on the presiding juror's representation to the court that the jury was deadlocked and to decline individual polling of the jurors." *Id.* The Court of Appeals concluded that because the district court did not abuse its discretion when it declared a mistrial, it also did not err when it overruled Price's plea in bar.

We denied Price's petition for further review of the Court of Appeals' decision.

*Second Trial.*

After the Court of Appeals affirmed the denial of the plea in bar, the district court held a second trial, in June 2018. The evidence presented by the State included the following:

Patrick Pantoja testified that at around 2:45 a.m. on October 3, 2014, he and a friend, Emmanuel Nartey, were walking north on 14th Street toward downtown Lincoln. As they passed by the Nebraska State Capitol Building, walking toward K Street, a group of three men approached and asked them if they had money. Pantoja said they did not, and he and Nartey continued walking north. Seconds later, Pantoja felt a hit to the back of his head; his memories after that became spotty, and his next clear memory was waking in a hospital room. Pantoja was able to describe the three men in general terms of race and clothing, but at trial, he did not identify Price or any other person as an assailant. Pantoja further testified regarding items of value that he had on his person immediately prior to the incident and that he did not have afterward.

Pantoja testified regarding the injuries he received and the effects of such injuries. The doctor who treated Pantoja also testified at trial and stated that when Pantoja arrived at the hospital, he was in a coma and required both a breathing tube and a feeding tube. Pantoja was diagnosed with severe traumatic brain injury; the doctor testified that such injury was consistent with being repeatedly punched and kicked in the head and that without medical intervention, his injuries could have been life threatening.

Nartey also testified, and he was able to provide more details regarding the incident. When the three men initially approached Nartey and Pantoja, one of the men told them to empty their pockets. Nartey and Pantoja ignored the men and continued walking; one of the men then hit Pantoja "from the back." At trial, Nartey described the three men as "[o]ne black guy and two white guys." He further described one of the "white guys" as having a "bald head" and wearing a "white shirt . . . with black markings on the shirt," and he testified

that this man was the man who first hit Pantoja. Nartey testified that after the man first hit Pantoja, the second white man asked, "What are you guys doing?" and suggested they leave. The second white man either left or was otherwise not involved in what occurred after the first hit.

Pantoja fell to the ground after being hit the first time. When Nartey "went in to separate" the white man from Pantoja, "the black guy came on to [Nartey] to push [him] away." Pantoja had stood up, and so both the white man and the black man "went onto him to just hit him back to the ground . . . just punching him." When Nartey "went in again to separate them," the black man hit Nartey in the face and tried to empty Nartey's pocket. Nartey decided to run, and when he ran, both men stopped hitting Pantoja and chased after Nartey.

After Nartey got about a block away, he turned around and saw the two men had stopped chasing him. Nartey stopped and watched as the two men walked back toward Pantoja, who had stood up again; the two men knocked Pantoja to the ground again, and they "started kicking him in the face, in the head, anywhere", and Nartey "saw them empty [Pantoja's] pocket." "[A]fter hitting [Pantoja] for several times, [the two men] just left." After the two men left, Nartey ran to Pantoja and saw that "he had blood all over his face." Nartey also saw that Pantoja's "pocket was empty" and had apparently been searched. He also saw certain of Pantoja's belongings, including a wallet and credit cards, "scattered around his body." Nartey looked for and found his cell phone, which he had dropped while running from the men. As he called for emergency assistance, an officer in a police car arrived.

The State asked Nartey at trial whether he saw "the white guy in court that [he] saw kicking and punching [Pantoja]," and Nartey identified Price. The State asked Nartey about his testimony that the "white guy . . . had a bald head." Nartey testified that Price had "very short hair at the time," but Nartey noted that at the time of the trial, Price's hair had grown and was "longer now than it was then."

On cross-examination, Price asked Nartey about his testimony in this case and his statements prior to trial describing the white man who hit Pantoja as being "bald" or having "no hair whatsoever." Price also cross-examined Nartey with a deposition in which Nartey described the man as wearing a "white shirt" but did not describe the shirt as having black lettering. Price also asked Nartey about being shown "six photographs of the white suspects" and whether he would agree that he was "unable to identify any one in that photo lineup . . . as being the white man who assaulted . . . Pantoja." The court sustained the State's hearsay objection before Nartey could answer.

Jerad McBride testified that he was the police officer who stopped upon seeing Pantoja on the ground with Nartey standing next to him, trying to wave McBride down. McBride observed that Pantoja was unconscious and "gasping for air" and had sustained injuries to his face and trauma to his head. McBride testified that Nartey described to him what had occurred when Nartey and Pantoja were approached by the three men. McBride asked Nartey for descriptions of the men; McBride testified that Nartey described the white man as having "a slim build with like a shaved head, short hair" and wearing "a white shirt." A patrol officer who had arrived on the scene drove around the nearby area looking for men matching the description given by Nartey but did not find anyone.

As part of their investigation of this case, McBride and other officers requested video surveillance from security employees at the Nebraska State Capitol, who provided video that they thought might be relevant. McBride watched one surveillance video that was taken at around 2:44 a.m. on October 3, 2014, and depicted a portion of the Governor's residence located near the Capitol building. McBride was attempting to determine whether persons depicted in the video matched the descriptions given of the suspects in this case. McBride asked another officer, Andrew Vocasek, to watch the video because he had been in the area on the night of the incident.

Vocasek testified at trial that in the early hours of October 3, 2014, he was working foot patrol in the area of 14th and O Streets in downtown Lincoln. Vocasek remembered talking to Price "sometime before 2 a.m." on October 3. Vocasek knew Price from "see[ing] him around" and "chatting" with him on several prior occasions. Vocasek testified that he had a "casual conversation" with Price and that Price "was with another gentleman" at the time. Vocasek testified that when he watched the surveillance video, he recognized one of the persons depicted in the video, and that the appearance of the person was consistent with how Price looked when Vocasek had seen him earlier.

Price thereafter became a suspect in the investigation, and police obtained a warrant to search the apartment in which Price lived with two other men, one of whom was Stelson Curry, who is a black male. In a search conducted on October 30, 2014, police found, inter alia, several items of clothing that matched the clothing worn by the two persons shown in the surveillance video. Certain of the pieces of clothing were found in a room that was identified as being Price's bedroom. An officer interviewed Price at the police station while the search warrant was being executed. Price denied taking part in the assault and initially stated that he likely had not left his apartment that night. After being shown still photographs from the surveillance video recorded around the time and location of the assault, Price stated that he may have gone out to one of two locations that night, but neither location was near where the surveillance camera was located.

Another investigator testified that she listened to the recording of a call that Curry placed to Price from jail on October 31, 2014, the day after the search. The call occurred after the interview of Price described above and at a time when Price had been released but Curry was in jail. In the conversation, Price listed for Curry the items that had been seized in the search of the apartment. In this call, Price identified some of the items of clothing as belonging to Curry and some as belonging to himself.

Police later submitted items found in the search for forensic testing. The testing showed that Pantoja's blood was on a pair of shoes that had been identified as belonging to Curry. Thereafter, in February 2015, Curry was arrested in this case.

Price was again interviewed by a police officer in April 2015. Price still denied being involved in the assault; he no longer stated that he might have gone to one of the two locations he mentioned in the earlier interview, and instead, he said that he might have walked around with Curry smoking a marijuana cigarette. Price was arrested in this case in July 2015.

At the close of the State's case, Price moved for a directed verdict and the court overruled the motion. Price chose not to testify, and he presented no other evidence in his defense. After resting his defense, Price renewed his motion for a directed verdict and the court again overruled the motion.

Price's counsel made no objections during the State's closing argument. The jury thereafter returned verdicts finding Price guilty on both counts. Prior to sentencing, at Price's request, the court discharged his counsel and appointed new counsel to represent Price. The court overruled Price's motion for new trial. The court thereafter sentenced Price to concurrent terms of imprisonment for 25 to 40 years on the two convictions.

Price appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Price first makes two claims related to the first trial and the plea in bar: (1) that the court erred when it failed to inquire of the jury whether it was deadlocked on each count before it declared a mistrial and (2) that the court abused its discretion when it overruled his plea in bar.

With regard to the second trial, Price claims that (1) the State committed prosecutorial misconduct by making various improper statements during closing argument, (2) the court abused its discretion when it overruled his motion for a new

trial, (3) the evidence was insufficient to support his convictions, and (4) the court imposed excessive sentences.

Price also set forth an assignment of error reading as follows: "[Price's] Counsel was ineffective and thus his constitutional right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and the respective guarantees in Article I § II of the Nebraska Constitution were violated." In his assignment of error, Price did not specify how counsel's performance was alleged to be deficient.

[1] As we declared in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. Recently, in *State v. Guzman, ante* p. 376, 940 N.W.2d 552 (2020), we noted that the requirement had been repeated in subsequently published decisions and noted that the defendant's brief in *Guzman* had been filed 3 months after our April 19, 2019, pronouncement in *Mrza* but failed to comply with the requirement. We rejected the defendant's argument in *Guzman* that he met the requirement because his assignment of error informed us that the particular allegations of ineffective assistance would be set forth elsewhere in the brief with more particularity and because in the heading of his argument on the issue, he identified particular deficiencies in all bold and capital letters. We declined to excuse counsel's failure to comply with the pronouncement in *Mrza*, noting that his brief was filed 3 months after the pronouncement in *Mrza*.

Price's brief in the present case was filed on August 22, 2019, 4 months after our pronouncement in *Mrza*. The State in its brief noted the failure of Price's assignment of error to comply with *Mrza*. In his reply brief, Price argues, similarly to the appellant in *Guzman*, that his "claims of ineffective assistance of counsel were properly presented" because such claims were "separately numbered and specifically discussed in detail" in

the argument section of his brief. Reply brief for appellant at 2, 3. However, because in *Guzman*, we did not afford judicial grace to a brief filed 3 months after *Mrza*, a fortiori, such grace will not be afforded a brief filed 4 months after *Mrza*. We therefore do not consider Price's assignment of error alleging ineffective assistance of counsel.

## STANDARDS OF REVIEW

[2,3] When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. Generally, we will find plain error only when a miscarriage of justice would otherwise occur. *Id*.

[4] The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *State v. Krannawitter, ante* p. 66, 939 N.W.2d 335 (2020).

[5] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

[6,7] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the

trial court. *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

*Assignments Related to First*
*Trial and Plea in Bar.*

Price's first two assignments of error relate to the district court's declaration of a mistrial in the first trial and its overruling of his plea in bar prior to the second trial. We determine that the Court of Appeals' decision in Price's appeal from the overruling of the plea in bar establishes the law of the case on both topics, and we therefore reject these two assignments of error.

[8,9] Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *State v. Lavalleur*, 298 Neb. 237, 903 N.W.2d 464 (2017). The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution. *Id*.

[10,11] On appeal, the law-of-the-case doctrine is a rule of practice that operates to direct an appellate court's discretion, not to limit its power. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). We have recognized that the doctrine does not apply if considerations of substantial justice suggest a reexamination of the issue is warranted. *Id*. But matters previously addressed in an appellate court are not reconsidered unless the petitioner presents materially and substantially different facts. *State v. Lavalleur, supra*.

In the present case, Price had the opportunity and the incentive to raise matters regarding the plea in bar and the court's

treatment of the deadlocked jury in the context of his appeal to the Court of Appeals from the denial of his plea in bar. Such matters were considered in that appeal, and the Court of Appeals' rulings on the issues resulted in affirmance of the denial of Price's plea in bar. We denied further review of the Court of Appeals' rulings, and therefore, such rulings establish the law of the case.

Although it determined that it did not directly have jurisdiction to consider orders other than the order which denied the plea in bar, the Court of Appeals nevertheless was obligated to consider Price's challenge regarding mistrial in the context of the plea in bar. And without further review, the Court of Appeals' assessments with regard to the grant of mistrial established the law of the case.

Price's claim in this appeal differs from his claim in the first appeal, wherein he asserted that it was error not to poll the jury. Here, he focuses on inquiring of the jurors whether they were deadlocked as to just one or both counts. As noted in the facts section above, in the earlier appeal, the Court of Appeals acknowledged and rejected Price's arguments based on his reading of *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017). Instead, the Court of Appeals emphasized our statement in *Combs* that, although not required, it was "the better practice [to inquire] of the jury [and in doing so] whether it was deadlocked on every count before it granted a mistrial." 297 Neb. at 430, 900 N.W.2d at 481. Thus, as the Court of Appeals noted, there was no abuse when the district court did not poll the jury in the first trial. The force of that reasoning continues to be the law of the case, and we do not think that in the current appeal, Price has presented materially and substantially different facts that would prompt us to reconsider those rulings. For example, Price has not, as did the defendant in *Combs*, shown evidence that jurors in his case were in fact not deadlocked on both counts or thought they had to be unanimous as to both counts.

We therefore conclude that as to Price's first two claims, the decision of the Court of Appeals affirming the denial of the plea in bar establishes the law of the case, and that although they are recast, we will not reconsider those rulings in this appeal. We reject both assignments of error.

*Prosecutor's Comments During*
*Closing Argument.*

[12] Price next claims that the State committed prosecutorial misconduct based on various allegedly improper comments made during closing argument. Price acknowledges that he did not object to those statements at the time they were made and that he did not move for a mistrial based on the statements. A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Because Price did not move for a mistrial, the alleged error was waived, and accordingly, our review of the issue is confined to a search for plain error. See *id*.

[13-16] Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *Id.* Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id*. A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id*. In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id*.

Price sets forth 35 remarks made by the prosecutor during closing arguments that he asserts were improper. He generally

groups the remarks into five categories, including remarks that he alleges (1) state the personal belief or opinion of the prosecutor regarding the credibility of testimony or the strength of the evidence; (2) label Price as a liar or imply that inconsistencies in his statements are evidence of guilt; (3) inflame prejudices or excite passions of the jury; (4) misstate evidence, refer to matters not in evidence, suggest improper influences, or invite speculation; or (5) refer to other acts or wrongs that are not in evidence and would not have been allowed into evidence. We have reviewed each of the instances and find no plain error.

Much of Price's argument focuses on the prosecutor's comments on the evidence, the strength of evidence, and the credibility of testimony. While we have recognized that a prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant, we have further stated:

> [W]hen a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. Thus, in cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence.

*State v. Gonzales*, 294 Neb. 627, 645-46, 884 N.W.2d 102, 117 (2016). We reasoned in *Gonzales* that the danger of a prosecutor's expressing a personal opinion is that the jurors may infer the prosecutor has access to information not in evidence and that with that inference and the imprimatur of the government, the jury might rest a decision on the government's opinion rather than its own view of the evidence. In *Gonzales*, we rejected a rule that it is per se misconduct for the prosecutor to

state that the defendant lied or is a liar. Instead, we adopted an approach that

> looks at the entire context of the language used to determine whether the prosecutor was expressing a personal opinion or merely submitting to the jury a conclusion that the prosecutor is arguing can be drawn from the evidence. If the prosecutor is commenting on the fact that the evidence supports the inference that the defendant lied, as opposed to a personal opinion carrying the imprimatur of the government, the comment is not misconduct. This is distinguishable from calling the defendant a "liar," which is more likely to be perceived as a personal attack on the defendant's character.

*Id.* at 647, 884 N.W.2d at 118.

Reviewing the State's remarks in this case under that approach and considering them in context, we believe the remarks challenged by Price were inferences from the evidence rather than statements of the prosecutor's personal opinion. Among his challenges, Price points to the instances where the prosecutor told the jurors to ask themselves "why is [Price] lying" and stated, "You know that is a lie." However, when viewed in context, the remark arose where the prosecutor was discussing evidence from which it could be inferred that Price gave inconsistent statements and may have lied in order to cover his involvement. Other statements that Price characterizes as misstating the evidence or referring to matters not in evidence were instances of the prosecutor's remarking on inferences that could be drawn from the evidence.

Price also asserts that the State referred to other wrongs or acts that were not in evidence and would not be allowed into evidence. These remarks were in the context of discussing the surveillance video and the prosecutor's characterizing the movements and actions of Price and his companion as indicating that "they are going out to take stuff," "checking cars," "out to steal," and "out to take things from other people." Such remarks do not state that Price actually committed wrongs or

acts, other than those acts charged in this case, such as stealing from cars or from people other than Pantoja, and so are not improper references to other acts or crimes that were not and could not be in evidence. Instead, the prosecutor was commenting on what was depicted in the surveillance video and suggesting possible inferences the jury might make based on Price's actions and movement depicted in the video.

We do not find the remarks challenged by Price to be improper, and we therefore do not find error, let alone plain error, when the court did not sua sponte declare a mistrial based on alleged prosecutorial misconduct. We reject this assignment of error.

*Motion for New Trial.*

Price next claims that the district court abused its discretion when it overruled his motion for new trial. We find no such abuse of discretion.

In his arguments in support of the motion for new trial, Price focused in large part on the alleged prosecutorial misconduct during closing argument. As we discussed above, we do not find such remarks to be improper, and as we did not find plain error in the failure to declare a mistrial based on such remarks, we also determine the court did not abuse its discretion when it denied a new trial based on the same remarks. See *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018) (finding no plain error in prosecutor's statement to which defendant did not object and consequently finding no error in overruling motion for new trial based on prosecutorial misconduct), *disapproved on other grounds, State v. Avina-Murilla*, 301 Neb. 185, 917 N.W.2d 865 (2018).

A second reason Price urged for a new trial was that, as he asserts in his brief, a police officer testified regarding "how photo lineups are created with mugshots including a mugshot of [Price]." Brief for appellant at 44. Price appears to imply that because there was a "mugshot" of Price, he had committed other crimes. *Id.* However, the record shows that in

direct questioning by the State, the officer merely referred to the photographs as "still photos" or "local photos." Price did not object to such testimony. Further information regarding the photographic lineup was adduced by Price on cross-examination when he asked a series of questions about how the lineup was created. In response, the officer referred to "book-in photos" and does not appear to have referred to "mugshots." Whether such testimony was unresponsive or inadmissible, it was minor in the context of the entire trial and not unfairly prejudicial. The court did not abuse its discretion by determining it did not require a new trial.

Finally, Price argued for a new trial because he alleged there was insufficient evidence to support the convictions. As discussed below, we conclude there was sufficient evidence. We therefore conclude that the district court did not abuse its discretion when it overruled Price's motion for a new trial. We reject this assignment of error.

*Sufficiency of Evidence.*

Price next claims that the evidence was not sufficient to support his convictions. We conclude that the evidence was sufficient.

[17] When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

Price was charged with aiding and abetting a robbery and for aiding and abetting a first degree assault. Robbery is defined in Neb. Rev. Stat. § 28-324 (Reissue 2016) as being when, "with the intent to steal, [one] forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." First degree assault is defined in Neb. Rev. Stat. § 28-308 (Reissue

2016) as when one "intentionally or knowingly causes serious bodily injury to another person." The theory of aiding and abetting a criminal act is described in Neb. Rev. Stat. § 28-206 (Reissue 2016) which provides that a "person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he [or she] were the principal offender." Our case law further defines "aiding and abetting" as follows:

> [A]iding and abetting requires some participation in a criminal act which must be evidenced by word, act, or deed, and mere encouragement or assistance is sufficient to make one an aider or abettor. No particular acts are necessary, however, nor is it necessary that the defendant take physical part in the commission of the crime or that there was an express agreement to commit the crime. Yet, evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving guilt under an aiding and abetting theory.

*State v. Stubbendieck*, 302 Neb. 702, 716-17, 924 N.W.2d 711, 723 (2019).

In this case, there was sufficient evidence, including the testimony of both Nartey and Pantoja, to establish that two men punched and kicked Pantoja to the extent of causing him serious bodily injury and that through the use of such violence, the men took property of value from Pantoja's person. Nartey identified Price as one of the men who carried out the assault and robbery, and there was also circumstantial evidence including the surveillance video and the testimony of a police officer that placed Price in the vicinity of the incident around the time that the incident occurred. To the extent the evidence is not specific regarding which of the two men delivered the specific punches and kicks that caused Pantoja serious bodily injury or which of the two men took property of value from Pantoja's person, the evidence was sufficient to show that if Price did not himself perform such acts, he aided and abetted the other man in doing so. See *State v. Thomas*, 210 Neb.

298, 314 N.W.2d 15 (1981) (in context of brawl, attributing particular injuries to particular actions was difficult, but as participant in conspiratorial effort to harm victim, defendant was liable for all victim's injuries). The evidence in this case indicates that two men participated in the criminal acts and that Price's participation went beyond mere presence, acquiescence, or silence.

Much of Price's argument with regard to sufficiency of the evidence focuses on the credibility of Nartey's identification of Price as one of the assailants. He argues that Nartey's testimony was inconsistent and that Nartey's description of the white man's appearance and clothing differed from Price's appearance and clothing at the time of the incident as shown in the surveillance video. For example, Nartey described the white male sometimes as being "bald" and other times as having "very short hair," and Price asserts that the video shows that he "ha[d] hair" at the time, brief for appellant at 57. Price also argues that the clothing as shown in the video differs from Nartey's description and that the video shows features such as tattoos, a watch, and earrings that Nartey did not include in his description of the assailant. Price argues that Nartey's identification of Price was key to the case because there was no other evidence such as DNA, fingerprints, or other witness testimony to identify him as the assailant.

With respect to inconsistencies, we note that Price was able to call the jury's attention to any alleged inconsistencies in Nartey's testimony and the jury was able to watch the video to determine whether Price's appearance and clothing on that night were consistent with Nartey's description of the assailant; it was then the jury's duty to determine the credibility of Nartey's in-court identification of Price as the assailant. We do not pass on the credibility of witnesses on appeal, *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020), and Nartey's identification of Price, if believed by the jury, along with the other evidence presented at trial, supports Price's convictions.

We conclude that there was sufficient evidence to support Price's convictions for aiding and abetting robbery and aiding and abetting first degree assault. We therefore reject this assignment of error.

*Excessive Sentences.*

Price finally claims that the district court imposed excessive sentences. We conclude that the sentences were within statutory limits and that the court did not abuse its discretion when it imposed the sentences.

Section 28-206 provides that one who aids and abets a crime "may be . . . punished as if he [or she] were the principal offender." Under §§ 28-324(2) and 28-308(2), respectively, robbery and first degree assault are both Class II felonies. Under Neb. Rev. Stat. § 28-105(1) (Reissue 2016), the sentence for a Class II felony is imprisonment for a minimum of 1 year and a maximum of 50 years. The concurrent sentences of imprisonment for 25 to 40 years that the court imposed on Price were therefore within statutory limits.

[18] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Price argues that the district court ignored or failed to give adequate consideration to mitigating factors, including trauma and abuse in his childhood and mental health issues that arose therefrom, the likelihood he would be responsive to probation supervision based on how he had conducted himself in custody during the pendency of this case, letters attesting to his character, and the effect of his potential imprisonment on his wife and young child. He also argues that the court did not adequately consider he had a lower level of culpability in the crime than Curry, who Price argues was the "main aggressor" and "caused the serious injuries to [Pantoja]." Brief for appellant at 61. Price asserts that Curry was given "exactly the same sentence" as Price despite Curry's greater culpability and less-compelling mitigating factors. *Id.*

At sentencing, the court noted that it had reviewed the presentence report and heard argument by Price's counsel, as well as Price's own statement to the court. The presentence report and the statements at the sentencing hearing include the mitigating factors set forth above. The court stated that in determining Price's sentence, it had regard for, inter alia, Price's "history character and condition." But the court also considered factors urged by the State, particularly noting the seriousness of the crime and the impact of the "severe injuries" to Pantoja on his life, his future, and his family and friends. There is nothing to indicate that the court considered inappropriate factors or that it ignored mitigating factors. We cannot say that the sentences were an abuse of discretion. We reject this assignment of error.

## CONCLUSION

Having determined that Price's assignments of error are either without merit or cannot be considered in this appeal, we therefore affirm Price's convictions and sentences.

Affirmed.