IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WAGNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTYN WAGNER, APPELLANT.

Filed February 4, 2025.    No. A-24-193.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Affirmed.

Jim K. McGough, of McGoughLaw, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Justyn Wagner pled guilty to and was convicted of murder in the second degree, possession of a deadly weapon by a prohibited person, and use of a deadly weapon (firearm) to commit a felony. Wagner, age 19 at the time of the incident, was sentenced to an aggregate term of 90 to 115 years' imprisonment. On appeal, he contends the district court erred in denying his request to withdraw his pleas and in imposing excessive sentences. He also claims his trial counsel was ineffective. We affirm.

## BACKGROUND

The State's factual basis reveals that on October 18, 2021, a young man was shot in Omaha, Nebraska. When officers arrived, they tried to treat him, but he was pronounced dead at the hospital. Detectives collected surveillance videos and discovered that there was a red Chevrolet Cruze driving around the area at the time of the shooting with its headlights off. They were able to

- 1 -

determine who the owner of the vehicle was and contacted her. According to the owner, Elijah Robinson was driving, and she and Wagner were passengers. She claimed that "they were driving around looking for "'crabs'" or "'ops,'" meaning they were looking for "oppositional gang members." At some point, Robinson pulled over, and Wagner got out of the car. The female passenger then heard multiple gunshots. When Wagner came back to the car, he said, "'I got him.'" After the shooting, they went to a gas station and then to Cabela's, where Wagner purchased more ammunition. However, "he actually ended up with the wrong ammunition." Some of that ammunition was found in the car when it was later searched.

Officers obtained a search warrant for Wagner's residence and found a gun that "match[ed] this scene." After Wagner's arrest, he "made admissions to knowing that gun was there on jail phone calls." Wagner was a convicted felon at the time of the shooting.

On December 22, 2021, the State filed an information charging Wagner with three counts: murder in the first degree, a Class IA felony, in violation of Neb. Rev. Stat. § 28-303 (Reissue 2016); possession of a deadly weapon by a prohibited person, a Class IC felony, in violation of Neb. Rev. Stat. § 28-1206(3)(B) (Cum. Supp. 2024); and use of a deadly weapon (firearm) to commit a felony, a Class ID felony, in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Cum. Supp. 2024). Various motions were filed, and in November 2022, Wagner rejected an initial plea offer. Trial was scheduled to commence shortly thereafter, however multiple subsequent motions to continue resulted in trial being delayed until September 2023.

On September 8, 2023, the State and Wagner reached a plea agreement where the murder charge was reduced to murder in the second degree, a Class IB felony, in violation of Neb. Rev. Stat. § 28-304 (Reissue 2016); the two firearm charges remained the same. Wagner pled guilty to all three counts. During the plea hearing, the district court advised Wagner of the constitutional rights he would be waiving if the court accepted his pleas. The court informed him of the following: his right to a speedy trial by a jury that would have to convict him by a unanimous verdict of guilt; his right to confront witnesses, and to subpoena witnesses to testify on his behalf; the State's burden to prove beyond a reasonable doubt that he committed the crimes, and that the jury would be advised that he was presumed innocent until proven guilty beyond a reasonable doubt; and his right to remain silent. The court asked Wagner if he understood all the rights that were just explained to him; he responded, "Yes." The court asked if Wagner understood that if it accepted his pleas of guilty, he would be giving up all these rights because there would not be a jury trial at which he could assert these rights. Wagner again responded affirmatively. The court asked if he understood his right to be represented by an attorney, and if found guilty, his right to appeal. Again, Wagner said, "Yes." The court informed Wagner of each charge filed against him and what the State would have to prove beyond a reasonable doubt in order for him to be found guilty of the charge; Wagner acknowledged his understanding as to each charge. He also acknowledged his understanding that by pleading guilty, he was admitting to the truth of these charges and that he would be convicted and sentenced without having a trial.

The district court then advised Wagner of the possible penalties he was facing. However, it incorrectly advised him that there was a mandatory minimum of 3 years' imprisonment and a maximum of 15 years' imprisonment for the charge of possession of a deadly weapon to commit a felony. Wagner stated that he understood the possible penalties for each charge. He also acknowledged his understanding that all charges could be ordered to run consecutively, including

that the conviction for use of a firearm to commit a felony had to run consecutively to the other charges.

Next, the district court informed Wagner about consequences if he was not a U.S. citizen. When asked if anyone had made any promises to get him to plead guilty, Wagner responded, "No, ma'am." The court also asked if anyone had told him or led him to believe that if he entered a plea of guilty, he would receive probation, be given a lighter sentence, or in any way be rewarded. Wagner once again responded, "No, ma'am." The court asked if anyone had made any threats, inducements, or assurances of leniency to get him to plead guilty. Wagner responded, "No, ma'am." Wagner also confirmed that he was entering his pleas freely and voluntarily and acknowledged that he had enough time to discuss his case with his attorney. When asked if he had discussed with his attorney all the evidence and any defenses he believed he had to the charges, and whether he was satisfied with his attorney and if his attorney had properly represented him, he responded, "Yes, ma'am." The court asked Wagner if there was anything he did not understand or whether he had any questions; Wagner replied "No."

After hearing the factual basis as set forth above, and after receiving a certified copy of Wagner's prior felony conviction, the district court asked if there was any objection to the State's factual basis. There was no objection by Wagner. When asked if the factual basis was sufficient to support a conviction of the charges to which Wagner had entered pleas of guilty, Wagner's counsel responded affirmatively. Defense counsel also acknowledged receiving all discovery to which they were entitled and confirmed that there was no advantage for Wagner to proceed to trial. Defense counsel agreed that Wagner's pleas were consistent with the law and the facts, and that the pleas were made knowingly, intelligently, and voluntarily. The court found beyond a reasonable doubt that Wagner understood the nature of the charges against him, the possible sentences, and that his pleas were made freely, knowingly, and voluntarily. The court found Wagner guilty on all three charges.

On January 24, 2024, Wagner submitted a letter to the district court asking to dismiss his trial counsel and withdraw his plea. He claimed that trial counsel "never showed me any discovery, never filed any motions, didn't do any of his own interviews/investigation, nor does he reach out on his own, answer his phone, or respond[] to my family." He claimed that his trial counsel "forced" him into pleading guilty "less than a week or two before trial." He stated that he wanted the plea deal to be in "black [and] white" with a "closed number." He explained that, at the very least, he wanted the maximum possible sentence to be under 60 years' imprisonment. He claimed his attorney was "lazy," that he only answered one call in "over a dozen" the past month, and that when he does answer, he is "always in a meeting, court, class, or claims he'll be down to see me [and] never comes." Wagner asked to withdraw his pleas and to "dismiss counsel for breakdowns in communication, irreconcilable [sic] decisions/disagreements, failure to represent me correctly."

Wagner's counsel filed a motion to withdraw as counsel on February 5, 2024. At a hearing on the motion the following day, Wagner's letter was marked and received. Wagner informed the district court that he did not "necessarily want to get rid" of his trial counsel. "It's just more so I wanted to take my plea deal back and get a better deal or get an agreement between you, prosecutor, myself, and my attorney, or go to trial." The following colloquy occurred:

>[Wagner]: I know it's kind of hard to withdraw a plea once you already pled out, especially when it gets closer to sentencing. That's [why] I tried to do it earlier after I pled

out, but I figure, like, the best way to do it would have been to try to get rid of my lawyer, which is not really what I want to do since I personally know my lawyer and I feel like things can get worked on for us to have a better chance in our case. But I mean --

[Court]: So are you advising this Court then that you are not asking [trial counsel] to withdraw from your case?

[Wagner]: Yeah. More so just want to withdraw my plea, if that's okay.

[Court]: So in that you privately retained [trial counsel], you're wanting to keep [him] as your attorney here today?

[Wagner]: Yes, ma'am.

Because Wagner stated that he did not want trial counsel to withdraw, the court denied the motion to withdraw as counsel. When the court asked Wagner's trial counsel if he was prepared to argue Wagner's "oral motion to withdraw his plea," trial counsel responded he was not prepared to do so. In response, the court indicated that sentencing was scheduled for February 13, so it proposed hearing the motion to withdraw pleas at that time assuming such a motion was formally filed by then.

Wagner, through his trial counsel, filed an amended motion to withdraw his pleas on February 12, 2024. His motion did not set forth any grounds in support of withdrawal. The district court heard the motion on February 13. Trial counsel asked the court to take judicial notice of Wagner's January 24 letter "outlining the reasons for the withdrawal of the plea." Trial counsel reminded the court that at the last hearing it "did do some inquiry to that, and I will let the record speak for itself on that matter." The court took judicial notice of the letter. The court recalled Wagner explaining that the reason he wanted to withdraw his plea "was because he wanted an actual number." The court denied Wagner's motion, explaining that "wanting a specific number" for sentencing "does not stand as sufficient reason to withdraw his plea."

Sentencing also took place on February 13, 2024. Wagner was sentenced to 70 to 80 years' imprisonment for murder in the second degree, 10 to 20 years' imprisonment for possession of a deadly weapon by a prohibited person, and 10 to 15 years' imprisonment for use of a deadly weapon to commit a felony. All sentences were ordered to run consecutively to each other. Wagner was given credit for 841 days already served.

## ASSIGNMENTS OF ERROR

Wagner contends the district court erred (1) in "failing to allow [him] to withdraw his pleas" and (2) by "sentencing [him] to an excessive sentence of 90-115 years without considering mitigating factors." He also generally assigns, "Whether Wagner received ineffective assistance of counsel."

## STANDARD OF REVIEW

Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Williams*, 276 Neb. 716, 757 N.W.2d 187 (2008).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

- 4 -

## ANALYSIS

### WITHDRAWAL OF PLEAS

Wagner assigns that the district court erred in denying his motion to withdraw his pleas. After the entry of a plea of guilty or no contest, but before sentencing, a district court in its discretion may allow a defendant to withdraw his plea for any fair or just reason, provided that the State has not been or would not be substantially prejudiced by its reliance on the plea. *State v. Williams, supra*. The defendant bears the burden of proving by clear and convincing evidence the grounds for withdrawal of a plea. *Id.* The right to withdraw a plea is not absolute and in the absence of an abuse of discretion by the district court, refusal to allow a defendant's withdrawal of a plea will not be disturbed on appeal. *Id.*

Wagner first argues that the district court erred in not allowing him to withdraw his plea because at the plea hearing the court improperly advised him on the penalty range for the charge of use of a deadly weapon to commit a felony. Therefore, he claims his plea was not voluntarily and intelligently entered. Notably, this argument was not raised in Wagner's motion to withdraw pleas nor in any arguments made before the district court. See *State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023) (when issue is raised for first time in appellate court, it will be disregarded inasmuch as lower court cannot commit error in resolving issue never presented and submitted to it for disposition). We nevertheless address why this argument fails.

Use of a deadly weapon to commit a felony is a Class IC felony, subject to a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-1205(1)(c) (Cum. Supp. 2024); Neb Rev. Stat. § 28-105(1) (Reissue 2016). It is true that the district court improperly advised Wagner that the range of possible penalties was a mandatory minimum of 3 years' imprisonment and a maximum of 15 years' imprisonment. Wagner was ultimately sentenced to 10 to 15 years' imprisonment for this count, which was within the statutory range of penalties and within the range of penalties articulated by the district court at the plea hearing.

In *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015), it was similarly argued that the district court did not properly advise as to the range of penalties prior to the defendant accepting a plea. However, the Nebraska Supreme Court concluded that "[a] court's failure to advise a defendant of the correct statutory minimum and maximum penalties does not automatically warrant reversal." *Id*. at 41, 863 N.W.2d at 820. It reiterated that "'[i]f it can be determined that the defendant understood the nature of the charge, the possible penalty, and the effect of his plea, then there is no manifest injustice that would require that the defendant be permitted to withdraw his plea.'" *Id*. (quoting *State v. Rouse*, 206 Neb. 371, 375-76, 293 N.W.2d 83, 86 (1980)). The court observed that the defendant in that case suffered no prejudice as a result of the erroneous advisement because his sentence was within the statutory range of penalties and within the range of penalties articulated by the district court at the plea hearing.

The same is true in this case; Wagner suffered no prejudice as a result of the erroneous advisement. Although the district court gave an erroneous advisement at the plea hearing, it ultimately ordered a sentence of 10 to 15 years' imprisonment on the Class IC felony conviction. This was within the statutory range and was within the range of penalties articulated by the district court at the plea hearing. Therefore, had this argument been raised and rejected by the district

court, we would have found no abuse of discretion in the court's decision to deny Wagner's motion to withdraw his pleas.

Wagner also argues that the district court erred in not allowing him to withdraw his pleas because he "expressed a lack of knowledge about the evidence against him and forwarded several complaints about the quality of his representation." Brief for appellant at 17. He further asserts that the letter he submitted to the court on January 24, 2024, "demonstrated a complete lack of understanding of the [judicial] process," and "call[ed] into question whether his pleas were knowingly and voluntarily made." *Id*. at 18. This argument fails because Wagner's reasons for withdrawing his pleas contradict the statements he made in court.

At the plea hearing, Wagner stated that he understood the charges filed against him and the possible penalties. He also stated that he understood the rights he was waiving by pleading guilty and that no one made any threats, promises, or inducements to get him to plead guilty. Finally, he stated that he was satisfied with trial counsel and that he believed trial counsel had properly represented him. Although Wagner sent a letter to the district court requesting to dismiss his attorney, he later stated that he did not "necessarily" want to "get rid of [trial counsel] as [his] attorney." He also said, "I figure . . . the best way to [withdraw my plea is] to try to get rid of my lawyer, which is not really what I want to do since I personally know my lawyer and I feel like things can get worked on for us to have a better chance in our case." These statements undermine Wagner's claims that he received inadequate representation, that he "demonstrated a complete lack of understanding of the [judicial] process," and that his pleas were not knowingly or voluntarily made. Brief for appellant at 18. As such, the district court did not abuse its discretion in determining that Wagner failed to establish sufficient grounds to withdraw his plea. See *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000) (no abuse of discretion in not allowing defendant to withdraw plea when defendant claimed attorney promised he would be able to withdraw, but at plea colloquy, stated that no promises had been made).

EXCESSIVE SENTENCES

Wagner asserts that the district court imposed excessive sentences and failed to consider several mitigating factors that justified a lesser sentence. He points out that he lost a loved one to cancer, struggled with mental health and substance abuse, was exposed to violence at a "very young age," made "positive use" of his time in jail by taking classes, and expressed remorse. Brief for appellant at 20. Wagner contends that the court "failed to provide a meaningful discussion as to why [his] sentence was greater than [Robinson's] who expressed no remorse." *Id*.

Murder in the second degree, a Class IB felony, is punishable by 20 years' to life imprisonment. Wagner was sentenced to 70 to 80 years' imprisonment. Possession of a deadly weapon by a prohibited person, a Class IC felony, is punishable by a mandatory minimum of 5 years' imprisonment up to 50 years' imprisonment. Wagner was sentenced to 10 to 20 years' imprisonment. Finally, use of a deadly weapon to commit a felony, a Class ID felony, is punishable by a mandatory minimum of 3 years' imprisonment up to 50 years' imprisonment. Wagner was sentenced to 10 to 15 years' imprisonment. Wagner's sentences are within the statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and

applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). For a defendant who has been sentenced consecutively for two or more crimes, we generally consider the aggregate sentence to determine if it is excessive. *Id.* In this case, a sentence for a conviction under § 28-1205(1) must be consecutive to any other sentence imposed. See § 28-1205(4).

Wagner's presentence investigation report (PSR) reveals the following information. The victim was 18 years old at the time he was killed. Wagner was 19 years old at the time of the incident; he was 21 years old at the time of sentencing. He has lived in Omaha his entire life and has never been married, nor is he the documented father of any children. He has a "pretty good" relationship with his father and a "mostly good" relationship with his mother. He gets along with his siblings. Wagner graduated from high school in 2020 but has not held a job for longer than 6 months. He admitted that he is affiliated with a gang in Omaha but claimed that he is trying to "move away from that life[style]."

Although Wagner has never been formally diagnosed with a mental health condition, he reported experiencing serious depression at the age of 18 after his girlfriend died from a brain tumor. He acknowledged having anger control issues as a child, but he denied being abused or neglected by family or being assaulted or victimized by others growing up. However, he claimed he has been shot at and has witnessed people being killed in the past.

Wagner has been a daily marijuana user since age 15. Further, he admitted that there was a time in his past when he abused alcohol due to experiencing depression over his girlfriend's death. He ingested prescription pills two to three times per week between the ages of 16 and 18.

Wagner's criminal history includes convictions for felony possession of marijuana and felony possession of a controlled substance. He was placed on probation for these offenses but was unsatisfactorily discharged after being arrested for the charges in this case, which occurred less than 2 months into his term of probation. Wagner scored in the "very high risk" range to re-offend in the level of service/case management inventory. Additionally, through an administered substance abuse questionnaire, Wagner was found to score in the problematic areas for violence and emotional stability.

Regarding his current convictions, Wagner shot and killed a young man who was walking with his stepfather in his neighborhood. Shortly after 8 p.m. on October 18, 2021, multiple gunshots were heard by witnesses and fired shell casings were collected at the scene of the shooting. Video surveillance helped law enforcement identify the vehicle driving in the area with its headlights off. Wagner was identified as the shooter by Robinson and the female passenger who was in the car with them. Two guns were located in the dryer at Wagner's residence, one of which

was a match for the gun used in the shooting and had Wagner's DNA on it. After Wagner was arrested and jailed, he called his sister and asked her to go home to see if his "money" was in the dryer, but she told him nothing was there because "they had already looked." Wagner's response was, "Damn . . . damn."

Wagner has not fully accepted responsibility for these offenses, although he has expressed some remorse about the incident. In his statement contained in the PSR, he admitted to providing the gun and offered an apology. However, he claimed that someone else shot the victim, stating, "I don[']t know who or why they shot [the victim] but my deep[est] most sincere condolences to his family. I am regretful and remorseful for being with my codefendant[.] I don't know who shot but I had a[n] accidental role of providing the gun and for that I accept my consequences." At the sentencing hearing, Wagner stated, "And on behalf of me, my co-defendant, and whoever else had something to do with this whole thing, you know, I just hope that my remorse is enough -- my apology is enough because, unlike everybody else, I'm man enough to apologize for whatever happened whether I had something to do with it or not." He also stated, "We're all human beings. We all make mistakes. Nobody's perfect. If we [were], we wouldn't be here right now."

While in jail and awaiting disposition for the current case, Wagner earned certificates for completing a victim impact and empathy class, an anger management class, and a restorative justice class. At the sentencing hearing, Wagner's counsel argued that the character letters reflect that Wagner is a "gentle giant," "meaning that he had a soft heart," "was committed to the community," and "always helped those who were in need." "So it begs the question what changed and what happened." Counsel argued that "every year, there [is] more and more change coming out as the science . . . is showing that young individuals and adolescents up to 25 have the same signs and mental capacities as most 16-year-olds when it comes to making decisions." He pointed out that Wagner "lost somebody he loved to cancer," and that "he spent four years . . . caring for her at her bedside, missing school, . . . but still was able to graduate." "[A]fter she passed, he started picking up charges." Defense counsel argued that "[n]obody was there to help." He noted that Wagner's "co-defendant was sentenced to 40 to 60 years," but unlike that co-defendant, Wagner "has been remorseful" and "tried to better himself." "So we think the same sentence is acceptable here because the mitigating factors were not present in the other case that are here."

The district court took into consideration the comments of counsel, Wagner, and the victim's family; the PSR, which included all of the police reports in this matter; the letter Wagner wrote to the court; and the statutory and case law factors that apply to sentencing. The court also added materials provided by defense counsel related to alleged biases in the PSR and the letters of support for Wagner. The court observed that Wagner has gone "back and forth with regards to taking responsibility" and that the victim "was just walking in the street with his [step]father when he [got] shot."

The district court was not required to explain its reasoning for sentencing Wagner more severely than Robinson. But given that the evidence pointed to Wagner as the shooter, it was reasonable for the court to impose a more significant sentence on Wagner than Robinson. Further, there is no evidence that the court failed to consider the relevant sentencing factors, including any mitigating or aggravating circumstances. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021) (sentencing court not required to articulate on record that it considered each sentencing factor, nor must it make specific findings as to facts pertaining to factors or weight given them).

An aggregate sentence of 90 to 115 years' imprisonment is significant. And this court is mindful of Wagner's young age at the time of this tragic incident. However, Wagner made a choice to go driving around with a gun looking for "crabs" or "oppositional gang members." He then made another choice to get out of the vehicle and shoot that gun at the victim, and an 18-year-old lost his life that night as a result. Having considered the relevant factors in this case, we cannot say that the district court abused its discretion in imposing Wagner's sentences.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Wagner's third assigned error states, "Whether Wagner received ineffective assistance of counsel." His assigned error does not specifically state how trial counsel was deficient.

The Nebraska Supreme Court has cautioned, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019). Therefore, even though Wagner more particularly describes the alleged deficiencies in the argument section of his brief, his failure to allege such deficiencies in the assignments of error section of his brief does not meet the requirement established by *State v. Mrza, supra*. As such, his ineffective assistance of counsel claim will not be addressed. See *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (ineffective assistance of counsel claim not considered when assigned error did not specify counsel's deficient performance, even though argument section of brief discussed claims in detail).

### CONCLUSION

For the foregoing reasons, we affirm Wagner's convictions and the district court's February 13, 2024, sentencing order.

AFFIRMED.