IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ADDLEMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOHN R. ADDLEMAN, APPELLANT.

Filed November 2, 2021.    No. A-20-793.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Audrey M. Elliott, of A. Elliott Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial, John R. Addleman was convicted of one count of third degree sexual assault of a child and one count of first degree sexual assault of a child. The Scotts Bluff County District Court sentenced him to a mandatory minimum of 10 years' imprisonment and up to 20 years' imprisonment for the count of third degree sexual assault of a child, and 30 to 60 years' imprisonment for the count of first degree sexual assault of a child, which included a mandatory minimum of 15 years. The sentences were ordered to be served consecutively. Addleman appeals his convictions and sentences, claiming errors related to the amended information filed by the State before trial, the admission of evidence regarding his prior attempted sexual assault convictions, the sufficiency of the evidence, the denial of his motion for new trial, and the excessiveness of his sentences. We affirm.

## II. BACKGROUND

This case arises from allegations that in November 2017, Addleman, 44 years old at the time, sexually assaulted two minors: M.K., then 7 years old, and A.K., then 13 years old. We summarize the events in this case, which will be set forth in more detail later in our analysis.

### 1. PRETRIAL PROCEEDINGS

On July 30, 2019, the State filed an initial information in the Scotts Bluff County District Court charging Addleman with count I, third degree sexual assault of a child, second offense, in violation of Neb. Rev. Stat. § 28-320.01(5) (Reissue 2016); count II, first degree sexual assault of a child less than 12 years of age in violation of Neb. Rev. Stat. § 28-319.01(2) (Reissue 2016); count III, attempted third degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-201 (Reissue 2016) and § 28-320.01; and count IV, being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). M.K. was the named victim in counts I and II, and A.K. was the named victim in count III. Addleman pled not guilty to all counts.

Following developments in the case, the State subsequently filed an amended information on January 22, 2020, charging Addleman with count I, third degree sexual assault of a child, second offense, in violation of § 28-320.01(5); count II, first degree sexual assault of a child less than 12 years of age in violation of § 28-319.01(2); count III, third degree sexual assault of a child in violation of § 28-320.01(3); count IV, being a habitual criminal pursuant to § 29-2221; and count V, first degree sexual assault of a child more than 12 years of age but less than 16 years in violation of § 28-319.01(2). M.K. was the named victim in counts I and II, and A.K. was the named victim in counts III and V. Addleman objected to the amended information at a hearing held on February 7, and the district court allowed the amended information over the objection. At the same hearing, Addleman pled not guilty to the charges in the amended information.

On August 8, 2019, the State filed a notice of its intent to present evidence, pursuant to Neb. Rev. Stat. § 27-414 (Reissue 2016), of prior sexual assaults for which Addleman had been convicted. At a hearing on March 4, 2020, the State offered certified copies of court documents evidencing that Addleman had been convicted of first degree sexual assault of a child in 1994, attempted first degree sexual assault in 2002, and attempted first degree sexual assault of a child in 2003. The victims from those previous cases were not present at the hearing. The district court declined to rule on the admissibility of any evidence or testimony under § 27-414 without hearing from those victims.

Addleman thereafter filed, among other motions, a motion in limine seeking to exclude the witness testimony concerning his prior sexual assault convictions. After a hearing in June 2020, the district court again declined to rule on the admissibility of the evidence regarding Addleman's prior sexual assault convictions until those victims testified.

### 2. TRIAL

Trial commenced on June 29, 2020, and continued through July 1. Addleman was present at trial. We proceed to summarize the testimony of the events underlying the charges against Addleman and the occurrences during trial relevant to the issues on appeal.

(a) Sexual Assaults of M.K. (age 7) and A.K. (age 13)

The charges against Addleman stem from disclosures by M.K. and A.K. that each was sexually assaulted by a man, later identified as Addleman, late one night in November 2017, while their mother was not present in the family home. In her testimony, M.K. recalled that she was assaulted "the night [her] Mom died." She woke up late at night and "wanted to get a snack or a drink." When she "was about to get up" from her mother's bed, she felt that "someone was there" who then "stuck his hand down [her] pants" and touched "[her] bottom." M.K. remembered feeling "[u]ncomfortable" at the contact, and she then "got up and . . . left the bedroom" to go sleep on the couch in the living room. M.K. believed that she had met this man before, and she remembered seeing him speaking with her mother at some time prior to the night of the assault. She did not remember this man's name.

A.K. testified that her mother died on November 22, 2017. She remembered that the assault occurred late at night during the week before November 22. A.K. had gone to bed "around nine, 10 o'clock" and chose to sleep with M.K. in their mother's bed. M.K. was already sleeping when A.K. went to bed. Their mother was not home that night, and A.K. stated that their oldest sister was home. As A.K. was sleeping, a man came into the bedroom. He began to rub A.K.'s lower back, and she woke up as a result of the touching. He was "laying next to [A.K.] on his side" and was "wearing a [T-]shirt and jeans." When A.K. woke up, M.K. was no longer in the bed. A.K. asked what happened to M.K., and the man responded that "he took care of her." He then told A.K. to undress and began "tugging at [A.K.'s] shorts" and taking off her shirt and underwear. A.K. told him "[t]o stop" as he was removing her clothing. He then "put his penis inside" her vagina. A.K. continued saying "[s]top," and he responded with "[s]h-sh's and hushes." According to A.K., he smelled of vodka. After some time, the penetration stopped, and A.K. left the bedroom while getting dressed and she moved to the living room where M.K. was sleeping. A.K. texted their mother, complaining of sickness and asking if she could come home, but their mother texted back that "she couldn't because she had already drank[] a few beers and that driving would be unsafe." A.K. also did not "want to wake up and tell" their oldest sister about what happened. A.K. testified that the man "left after giving [A.K.] his [business] card." The card "was black and white and said something about a D.J. and Company."

A.K. later described this man as "bald" with blue eyes, "a scruffy beard," and a build "between muscular and skinny." A.K. could not recall whether this man had any tattoos. At trial, A.K. pointed towards Addleman and stated that he was the one who came into the bedroom, but A.K. could not recall his name other than his name was "[s]omething that starts with a J, John." A.K. also recalled briefly meeting him once before during the summer in 2017 when he was talking with her mother outside of their house.

Neither M.K. nor A.K. disclosed the November 2017 assaults until later points in time. M.K. reported the assault to her therapist in June 2018, and law enforcement thereafter began an investigation into M.K.'s disclosure. In early July, forensic interviews were conducted for M.K., A.K., and the oldest sister. Investigator Rob Kiesel recalled that during her interview, M.K. described the person who assaulted her as having "brownish, whitish hair." Although only M.K. had disclosed the sexual assault at this time, A.K. and the oldest sister were interviewed to gather additional information and to verify if either was "a victim of some type of abuse or neglect."

During their separate interviews, A.K. and the oldest sister were asked whether they would suspect any of the men their mother was seeing at the time of "being capable of doing something inappropriate" towards M.K., and in response, the two siblings each mentioned a disc jockey and gave physical descriptions of this individual. According to Investigator Kiesel, A.K. described him as "[b]alding" and the oldest sister stated that he had "brown hair which was super short." Based on the siblings' interviews and subsequent investigation, law enforcement identified Addleman as a primary suspect. Thereafter, A.K. and the oldest sister identified Addleman in separate photo arrays as the person each believed would have assaulted M.K. Law enforcement did not conduct a photo array with M.K. Later in July, Investigator Kiesel interviewed Addleman regarding the sexual assault allegations against him.

According to A.K.'s therapist, A.K.'s own disclosures of sexual assault occurred in July or August 2019. A second forensic interview of A.K. was held in December. Regarding the delayed disclosure of the assault, A.K. explained at trial, "It's just not a topic I like to think about."

(b) Admission of § 27-414 Evidence of Prior Sexual Assaults

During the course of trial, the district court held a hearing outside the presence of the jury in which three witnesses, N.W., H.J., and Officer Martin McIntire of the Holdrege Police Department, testified regarding Addleman's prior sexual assault convictions in 2002 and 2003. The State did not call a witness to testify regarding Addleman's 1994 sexual assault conviction.

N.W. testified that she dated Addleman for a period of time in approximately 2000 or 2001 when she was "[a]bout 15" years old; at the time of trial she was 34 years old. She stated Addleman looked to be in his "[l]ate 20's, early 30's" when they dated. She explained that she first met Addleman in an online chatroom and met him in person the first time at his house, which she described as a "party house . . . where people went that were underage to drink." She stated that Addleman's house was in "Gering[, Nebraska]." She believed she and Addleman "were in some kind of a relationship" and stated that there were multiple sexual encounters in that time period. She acknowledged that regardless of her age at the time, it was consensual. The relationship ended when someone called her "parents' house" regarding her relationship with Addleman. Charges relating to these events were later brought against Addleman in Scotts Bluff County, Nebraska. Pursuant to a plea agreement, Addleman was convicted in 2003 of attempted first degree sexual assault of a child for which he was sentenced to 3 to 5 years' imprisonment.

H.J., formerly H.V., testified that she met Addleman in 2002 when she was 15 years old and living in Holdrege, Nebraska; at the time of trial she was 33 years old. She first met Addleman at "a high school party" where she recalled telling him that she was 18 years old. Following this party, she exchanged "[a] few phone calls" with Addleman and later went over to his house, which was in Holdrege at the time. Addleman broached the topic of sex, but the encounter did not escalate beyond "kissing" and "touch[ing]" with some digital penetration. She acknowledged that the "sexual engagement" she had with Addleman was consensual. Charges relating to these events were subsequently brought against Addleman in Phelps County, Nebraska. Pursuant to a plea agreement, he was convicted in 2002 of attempted first degree sexual assault for which he was sentenced to 3 to 4 years' imprisonment.

Officer McIntire testified as to his role in the investigation of the 2002 sexual assault case involving H.J., who was 15 years old at the time, and Addleman, who was 28 years old at the time.

Officer McIntire recalled that during an investigative interview with Addleman, Addleman advised that he "had sexual contact with [H.J.]" at a party and alcohol was involved. Addleman also admitted "that there was lots of alcohol at the party and then later he actually admitted to giving alcohol to some of the minors." While "working this Holdrege investigation," Officer McIntire was contacted by the Scottsbluff Police Department concerning the sexual assault involving N.W. and a theft reported at the high school. He recalled that when he interviewed Addleman regarding the sexual assault of N.W., Addleman advised that "he had a relationship with [N.W.]" and "that it went on for a period of time" after the two met at a party where alcohol was present. When Officer McIntire was asked if he "[saw] anything that [he] would term 'grooming,'" he replied that he "was able to see that [Addleman] found both victims at parties, he then was able to start communicating with them, and that at some point it became more private. . . . [I]n Phelps County, he provided the victim with something, that being alcohol, something [the victim] couldn't get normally."

After the district court heard the witness testimony regarding Addleman's prior sexual assault convictions, Addleman objected to the admission of testimony and evidence relating to those convictions. The court took the evidence and Addleman's objection under consideration. In a journal entry dated June 30, 2020, the district court allowed the presentation of evidence regarding Addleman's 2002 and 2003 convictions. The court found there was clear and convincing evidence of those two assaults and that the probative value of the evidence was not outweighed by the "likelihood that the jury will misuse the evidence." The court did not permit evidence regarding Addleman's 1994 conviction to be presented to the jury, as the court found the documents received at the March 4 hearing to be insufficient evidence from which the court could "make balancing findings as required in section 414." The testimonies of N.W. and H.J. were subsequently read to the jury when trial resumed.

### 3. Deliberation, Verdict, and Posttrial Proceedings

At the conclusion of the State's case in chief, Addleman moved for count I (third degree sexual assault of M.K.) and count II (first degree sexual assault of M.K.) to be dismissed on the basis that the State failed to prove a prima facie case as to those charges. The State did not contest the motion with respect to count II. The district court overruled Addleman's motion as to count I and granted his motion as to count II. The case was then submitted to the jury.

After deliberation, the jury found Addleman guilty of count III (third degree sexual assault of A.K.) and count V (first degree sexual assault of A.K.). The jury found Addleman not guilty of count I, the third degree sexual assault of M.K.

Addleman filed a motion for new trial, and a hearing was held on October 16, 2020, addressing this motion, as well as sentencing. Addleman alleged first that the prosecution's statements during closing arguments amounted to prosecutorial misconduct that caused him prejudice. Addleman further alleged that the district court improperly issued a response to a question from the jury during deliberation in the absence of and without consulting the parties and thus deprived Addleman of a fair trial. Addleman also asserted that the evidence was not sufficient to sustain a guilty verdict. The district court found that no impropriety occurred and overruled Addleman's motion for new trial.

The district court thereafter found Addleman to be a habitual criminal and sentenced him to consecutive sentences of 10 to 20 years' imprisonment for the third degree sexual assault of A.K., with a 10-year mandatory minimum, and 30 to 60 years' imprisonment for the first degree sexual assault of A.K., with a 15-year mandatory minimum. Addleman was credited with 430 days for time previously served.

Addleman appeals.

## III. ASSIGNMENTS OF ERROR

Addleman assigns five errors on appeal: (1) the district court erred in allowing the State to file an amended information, (2) the district court erred in admitting his prior convictions for the jury's consideration, (3) there was insufficient evidence to support his convictions, (4) the district court abused its discretion in denying his motion for new trial, and (5) the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion. *State v. Johnson*, 290 Neb. 369, 859 N.W.2d 877 (2015).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Valverde, supra.*

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Wheeler*, 308 Neb. 708, 956 N.W.2d 708 (2021).

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

## V. ANALYSIS

### 1. AMENDED INFORMATION

Addleman claims that the district court abused its discretion when it permitted the State to file the amended information. More specifically, he argues that he was prejudiced by the timing of the filing of the amended information which contained altered and additional charges as compared to the original information, and by the increased penalties brought by the new charges in the amended information.

As previously set forth, the initial information filed in July 2019 charged Addleman with first degree and third degree sexual assault of a child, M.K., and attempted third degree sexual assault of a child, A.K. Addleman was also charged with being a habitual criminal. Addleman pled not guilty to all charges in the initial information. However, in the January 2020 amended information, the charges related to A.K. were changed; the other charges remained the same. The amended information now charged Addleman with third degree sexual assault of a child (count III) and first degree sexual assault of a child older than 12 years old but younger than 16 years old (count V), with both charges naming A.K. as the victim.

On February 7, 2020, the district court held a hearing in which it considered the State's motion for leave to amend the information. The State explained that A.K. had "disclosed . . . more details," and "further information . . . provided to the State" through A.K.'s second forensic interview, supplied the basis for the two new charges in the amended information. Addleman objected to the State's motion, arguing that the State did not properly file the amended information, the new charges were "significantly different" from those in the initial information, the amended information was untimely and prejudicial in light of the pretrial conference scheduled for March 25, and the State's filing was vindictive in nature. The court overruled Addleman's objection and granted the State's motion. The court advised Addleman of his right to a preliminary hearing regarding the new charges contained in the amended information and asked if he desired a preliminary hearing for those charges. Addleman replied, "No," and the court accepted his response as "a knowingly, intelligent waiver of the right to a preliminary hearing." The court then advised Addleman of the allegations underlying the two new charges and the penalties if convicted, and Addleman pled not guilty to both counts.

A district court, in its discretion, may permit the prosecution to amend a criminal information before trial, provided the amendment does not change the nature or identity of the offense charged and the information, as amended, does not charge a crime other than the one on which the accused has his preliminary examination. *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973). However, this proposition does not preclude the State from ever filing an amended information containing charges substantially different from those contained in the original information. Rather, if an amended information containing new, unrelated charges is filed, due process requires the defendant be afforded an additional preliminary hearing on those new charges. See *State v. Ferree*, 207 Neb. 593, 299 N.W.2d 777 (1980) (determining that under *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977), prosecution could not amend complaint so that nature or identity of charged offenses had been changed without preliminary hearing on those charges in amended complaint). However, if the defendant is given a preliminary hearing and the information is later amended to charge a crime that includes some of the elements of the original

crime charged without the addition of any element irrelevant to that original charge, no new preliminary hearing is necessary. See *State v. Ferree, supra.*

After overruling Addleman's objection, the district court advised Addleman of his right to a preliminary hearing on the amended information and asked if he desired that hearing. After conversing with counsel, Addleman declined to have a preliminary hearing and thereafter pled not guilty to the new charges. We need not address whether the charges in the amended information were substantially different from those in the original information, because we find Addleman knowingly and intelligently waived his right to a preliminary hearing on the charges in the amended information. See *id.* (to be valid, waiver of constitutional rights must be intentional relinquishment or abandonment of known right or privilege). In this case, Addleman was properly afforded due process with respect to the filing of the charges in the amended information. See *id.* (defendant not afforded due process when trial court allowed prosecution to file amended complaint without additional preliminary hearing; record did not affirmatively demonstrate defendant waived right to preliminary hearing for charges of violating probation based on grounds not supported by evidence presented at initial preliminary hearing).

We further note that despite Addleman's claim that the amended information required him to modify his defense plan in a short window of "5 weeks prior to pretrial," brief for appellant at 29, the record indicates the pretrial conference initially scheduled for March 25, 2020, was first continued until March 30, and later continued until May 22. Addleman therefore had at least two additional months to prepare his defense before the pretrial conference, and the record indicates that his counsel was able to gather evidence and depose several witnesses relevant to the charges in the amended information during that period. Moreover, if Addleman was not prepared, he could have requested an additional continuance, but there is nothing in our record to indicate that was done. Trial did not begin until June 29. In light of the record and applicable law, we conclude the district court did not abuse its discretion in allowing the State to file the amended information.

## 2. ADDLEMAN'S PRIOR SEXUAL ASSAULT CONVICTIONS

Addleman claims the district court erred in allowing the State to present to the jury testimony and evidence regarding his prior convictions for attempted sexual assault.

Pursuant to § 27-414(1), in a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the defendant committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant. *Id.* When the State intends to offer evidence of a defendant's prior offenses of sexual assault, § 27-414(2) requires the prosecuting attorney to disclose that evidence to the defendant, including witness statements or summaries of any testimony expected to be offered, at least 15 days prior to trial. Before that evidence is admitted, the trial court must hold a hearing outside the presence of the jury where the rules of evidence apply, and the court shall apply a balancing test pursuant to Neb. Rev. Stat. § 27-403 (Reissue 2016), to determine whether the risk of prejudice substantially outweighs the probative value of that evidence. See § 27-414(3). The trial court "may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the

crime charged." *Id.* In the context of this balancing test, "unfair prejudice" means an undue tendency to suggest a decision based on an improper basis and speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. See *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017).

Addleman first argues that the State should not have been allowed to present the testimony of the witnesses to the district court during trial because "the State was not able to follow[] clear statutory requirements prior to trial under its own motion." Brief for appellant at 31. Addleman claims that his "rights were clearly violated by the State not being prepared" for the March 2020 hearing as the State was given "a second chance to 'prove' their case during the middle of trial" through the admission of the evidence of Addleman's prior sexual assault convictions. *Id.*

The State gave notice of its intent to offer evidence and witness testimony regarding Addleman's prior convictions on August 8, 2019, when it filed a "Notice of State's Intent to Use N.R.S. § 27-414." While the State failed to produce the prior victims to testify at the March 4, 2020, hearing, the district court expressly declined to rule on the admissibility of the evidence and testimony until those two witnesses testified. Those witnesses thereafter testified outside the presence of the jury during trial. After hearing their testimony, the court granted the State permission to present the § 27-414 testimony and evidence to the jury. Our review of the record indicates that the procedural requirements of § 27-414 were satisfied in this case, and we accordingly find no impropriety in the sequence of events.

Addleman next argues that the district court erred in admitting testimony and evidence relating to Addleman's 2002 and 2003 convictions. Addleman primarily asserts that these "prior convictions do not have similarities to the current charges and only served to highly prejudice [him] and to confuse and manipulate the jury into conviction under a theory of 'he did it before, so it had to be him now.'" Brief for appellant at 29-30. Addleman highlights several dissimilarities between his prior convictions and the present case. He states that, unlike the victims in his prior convictions, M.K. and A.K. could not clearly identify him as the perpetrator and that their encounters were limited to a single instance rather than multiple separate encounters. He further contrasts the prior convictions, which stemmed from sexual encounters with consenting participants (although not of legal age to consent), to his encounters with M.K. and A.K., who, by their testimony, were not willing participants. Addleman also emphasizes the difference in the ages between the prior victims, who testified that they were 15 at the time of their encounters with Addleman, and M.K. and A.K., who were 7 and 13 respectively in November 2017. He also notes the temporal remoteness of these prior offenses, as "[t]here was a difference of 15 years between the last conviction and current charge, wherein the three priors were basically 1 year apart." *Id.* at 32.

As previously set forth, the district court "allow[ed] the presentation of the prior sexual assaults from Phelps County . . . and Scotts Bluff County[,]" but determined that "the [1994] sexual assault from Douglas County [was] not admissible." The court found "strong similarity between the Phelps and Scotts Bluff County cases and the case currently on trial." In its June 30, 2020, journal entry, the court stated:

> All of the victims are young; mid-teens or younger. All the victims had some level
> of social acquaintance with the defendant. In each case, the defendant had some level of

trust established with the victims to create an opportunity for the assaults. In the prior cases, the defendant offered the victims alcohol, something they wanted and would have had some difficulty obtaining, to place himself in a position to engage in sexual conduct with them. The victims displayed a belief they had some type of "relationship" with the defendant. In the current case, the defendant was acquainted with the victim's [sic] mother, and the victims had met him before; and this gave him access to the victims. None of the assaults are random acts of violence against unknown victims.

The assaults all involve some level of contact or penetration.

None of the acts are initially legal acts which become illegal due to withdrawal of consent; in the prior cases, the acts are illegal because of the age difference, regardless of consent. While there is no indication of consent in the current case, the issue is the same, as the age differen[ce] makes consent irrelevant.

The two priors show a consistent and continuous pattern of sexual assault against young female victims.

The court also noted that there had "been about 15-16 years between the prior offenses and the current." However, the court found that this time period did not render the prior offenses so remote that the evidence should not be admissible; intervening circumstances included Addleman's incarceration for those prior offenses.

While we recognize that there are differences between Addleman's prior offenses and the facts of the case before us, § 27-414 does not require the circumstances of those prior offenses to precisely match the circumstances of the present offenses. See, *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013) (finding prior offenses sufficiently similar to be admitted under § 27-414 despite victims' ages ranging from 12 to 14, individual assaults involving different forms of sexual contact, and each assault occurring at different location where defendant was residing); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012) (finding prior offenses sufficiently similar to be admitted under § 27-414 where all victims knew defendant and their ages ranged from 5 to 16; prior and charged offenses also included common acts such as touching and digital penetration). We observe, as the district court did, that Addleman's prior sexual assaults and the present case were initiated by Addleman and involved victims who were below the age of consent at the time of the respective offenses. The prior offenses and the current charges all involved touching in a sexual nature and, with the exception of the charges relating to M.K. in this case, also involved the digital or penile penetration of the victim. The record before us also indicates the victims all knew Addleman in some capacity prior to the respective offenses and Addleman likewise knew them. We find that Addleman's prior offenses were similar enough to the charges in the present case to be admissible under § 27-414.

We also recognize the significant amount of time between Addleman's prior offenses and the charges in the present case. However, the question of whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. See *State v. Valverde, supra*. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. See *id.* We note that the Nebraska Supreme Court has upheld the admission of prior sexual assaults that were similarly remote to the charged offense as in the present case. See, *id.* (evidence of prior sexual assaults admissible where earliest

prior act occurred 15 years before charged offenses and latest prior act occurred 13 years before charged offenses); *State v. Kibbe, supra* (evidence of prior sexual assaults admissible when earliest prior act occurred 26 years before charged offenses and latest prior act occurred 14 years before charged offenses). In light of the similar timeframe between Addleman's prior sexual assaults and the present case, and taking into account Addleman's terms of incarceration for those prior offenses, we are not persuaded that Addleman's prior sexual assaults were so temporally remote as to render the evidence thereof inadmissible.

In considering the provisions of § 27-414 and the record before this court, we cannot say the district court abused its discretion in admitting the evidence and testimony regarding Addleman's 2002 and 2003 attempted sexual assault convictions. This evidence was therefore properly placed before the jury at trial.

### 3. SUFFICIENCY OF EVIDENCE

Addleman contends that the evidence was not sufficient to sustain his sexual assault convictions.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

### (a) Statutory Elements and Relevant Testimony

The jury convicted Addleman of third degree sexual assault of child and first degree sexual assault of a child. Section 28-320.01 provides, in relevant part:

> (1) A person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.
> . . . .
> (3) Sexual assault of a child is in the third degree if the actor does not cause serious personal injury to the victim.

Additionally, § 28-319.01 provides in relevant part that a person commits first degree sexual assault of a child when he or she "subjects another person who is at least twelve years of age but less than sixteen years of age to sexual penetration and the actor is twenty-five years of age or older."

As we have set forth previously, testimony and other evidence adduced at trial indicated that A.K. was subjected to sexual contact and sexual penetration in November 2017, and A.K. identified Addleman in a photo array and at trial as the perpetrator. A.K. was 13 years old in November 2017, and Addleman was around 44 years old at that time. Taking the record before us in the light most favorable to the prosecution, a rational fact finder could have found Addleman

guilty of third and first degree sexual assault of a child beyond a reasonable doubt. The evidence was therefore sufficient to support his convictions.

(b) Challenges to Evidence

Nevertheless, Addleman makes two general claims challenging the evidence supporting his convictions. First, he once again asserts that the district court erred in admitting the evidence of his prior sexual assault convictions and alleges that it was this "purely prejudicial 15-year-old evidence that allowed [him] to be convicted." Brief for appellant at 38. As we previously found, the district court did not abuse its discretion in admitting this evidence.

Second, Addleman claims that attempts to identify him as the perpetrator of the current crimes were unreliable, flawed, and prejudicial. More specifically, he asserts that (1) A.K.'s identifications of him during the photo array and at trial were improperly suggestive and therefore unreliable, (2) the investigation by law enforcement was flawed, and (3) his presence at trial was prejudicial such that his constitutional rights to due process were violated.

Addleman claims that the description given by A.K. to law enforcement of a person who was "bald" with blue eyes, "a scruffy beard," and a build "between muscular and skinny" did not match Addleman's "brown hair, not balding, . . . brown eyes and tattoos." Brief for appellant at 39. Addleman contends that this mismatch was further compounded by photo arrays that included photographs that had more differences than similarities to Addleman's photograph, including "differences such as hair vs balding, beards vs no beards, etc." *Id.* at 40. He argues that these photo arrays were impermissibly suggestive due to the differences between his photograph and the other photographs, and he asserts that such suggestiveness rendered the photo array constitutionally invalid. Addleman further claims that his mere presence at trial, where A.K. identified him, violated his right against self-incrimination because it made "it easy for any witness to claim he was their assailant" despite the State not having "any identification [by M.K. or A.K.] prior to trial." *Id.* at 42. Our review of the record does not show that Addleman raised these constitutional concerns at the trial court level, and thus we will not consider such on appeal. See *State v. Reinhart*, 283 Neb. 710, 811 N.W.2d 258 (2012) (constitutional issue not presented to or passed upon by trial court not appropriate for consideration on appeal).

Addleman also claims that the investigation into these assaults was flawed in that "Investigator Kiesel did not interview all potential suspects; did not ask for other DJs; [and] did not ask [Addleman] for his [dating app] profile" or the mother's profile. Brief for appellant at 41. Additionally, per Investigator Kiesel's testimony, A.K.'s text message sent to the siblings' mother on the night of the assaults was not recovered from their mother's phone or A.K.'s phone during the investigation. Addleman's brief primarily emphasizes the apparent inconsistencies in the siblings' given descriptions and the manner in which the criminal investigation was carried out.

However, we note that Addleman's counsel extensively cross-examined M.K., A.K., Investigator Kiesel, and other witnesses during trial regarding these matters. We have previously set forth the accounts given by M.K. and A.K. regarding the night of the assaults and events occurring thereafter. Investigator Kiesel testified extensively regarding the criminal investigation and his decisions throughout, and matters such as the discrepancies in the siblings' descriptions, the nature of the photo arrays, and the leads he chose to not follow in the investigation were

- 12 -

highlighted by Addleman's counsel on cross-examination. The alleged shortcomings in the investigation were made known to the jury and emphasized significantly over the course of trial.

The evidentiary challenges Addleman brings on appeal do not go towards the question of whether the essential elements of third and first degree sexual assault of a child have been satisfied in this case. Rather, Addleman's arguments go towards the credibility of witness testimony and the weight to be given to the results of the criminal investigation and other evidence presented at trial. As precedent makes clear, that is not the province of this court. See *State v. Figures, supra* (appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact).

### 4. MOTION FOR NEW TRIAL

Addleman claims the district court abused its discretion in denying his motion for new trial. In his motion, he argued that prosecutorial misconduct occurred during closing arguments, the district court improperly responded to a question from the jury during deliberation, and the evidence was insufficient to sustain his conviction. In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

We have already found that the evidence was sufficient to sustain Addleman's conviction, and the district court therefore did not abuse its discretion in denying Addleman's motion for new trial on that basis.

### (a) Juror Affidavit

Before we address Addleman's remaining claims regarding the denial of his motion for new trial, we observe that Addleman's claims rely extensively on the juror affidavit offered and received at the hearing on Addleman's motion for new trial.

Neb. Rev. Stat. § 27-606(2) (Reissue 2016) governs the admissibility of evidence regarding the validity of a jury's verdict and states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

The Nebraska Supreme Court has further stated that no evidence may be received concerning the effect of any statement upon a juror's mind, its influence upon the juror, or the mental processes of a juror. See *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Section 27-606(2) does not allow a juror's affidavit to impeach a verdict on the basis of jury motives, methods, misunderstanding, thought processes, or discussions during deliberations. *Id.*

The juror affidavit in this case includes statements regarding the juror's position as a "hold out" during deliberation and his reasoning behind his position, the district court's response to the jury's request to view the recording of A.K.'s forensic interview causing the juror to feel "as if [he] had to change [his] vote," the impact of the prosecution's statements concerning an intrauterine device (IUD) on the jury's deliberation, and the alleged weight given by other jurors to Addleman's prior convictions and other evidence and statements. The operative portions of the affidavit primarily describe the mental processes of the individual juror as well as those of the other jurors over the course of deliberation. Under § 27-606(2), it is improper for a court to consider such statements in determining whether misconduct affecting the verdict has occurred and whether any such misconduct was prejudicial. See, also, *State v. Stricklin, supra* (juror's statements as to his desire to vote not guilty, pressure from other jurors to change his vote, his "moral dilemma," and jury's reliance upon defendant's failure to testify were inadmissible under § 27-606(2) and could not have been considered by trial court regarding defendant's motion for new trial). A juror may provide evidence regarding "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." § 27-606(2). See, also, *State v. Stricklin, supra*. As such, in the context of Addleman's motion for new trial, we consider the juror affidavit only in regard to the district court's response to the jury's request to see the recording of A.K.'s forensic interview and the prosecution's statements during closing argument concerning A.K. having an IUD.

We proceed now to address Addleman's remaining claims alleged in his motion for new trial.

### (b) Prosecutorial Misconduct

Addleman argues that statements made by the prosecution during closing arguments regarding A.K. having an IUD were improper and constituted prosecutorial misconduct.

Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.* In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *Id.* It is then necessary to determine the extent to which the improper remark had a prejudicial effect on the defendant's right to a fair trial. *Id.* Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction. *Id.*

During closing arguments, Addleman drew attention to the lack of "medical proof" that A.K. was penetrated and the fact that no physical examination of A.K. was conducted to "help prove that [A.K.] was, in fact, penetrated." In its rebuttal, the State argued in part:

> There is some talk about SANE examination. I don't believe there was any evidence as to what a SANE exam actually is. There was a question about whether it was done. You have to consider the evidence in front of you. The evidence from Investigator Kiesel was that this was not a case we could do a rape kit on. The other testimony was that [A.K.] has an IUD, an intrauterine device, which by definition is inserted into [A.K.'s] uterus up through [A.K.'s] vagina and so there will be some sort of vaginal penetration.

Addleman subsequently objected to these statements, arguing that "the testimony about whether [A.K.] had an IUD was not presented at trial." Addleman requested that the district court instruct the jury to disregard that statement. The court overruled the objection. Addleman subsequently alleged the prosecution's statements as a ground for his motion for new trial, and the court denied this motion as well.

In determining whether the prosecutor's statements amounted to misconduct, three pieces of testimony are relevant. At trial, A.K. testified to having had an IUD implanted around August 2018; this was several months after the November 2017 sexual assault and prior to her 2019 disclosures of the assault. Investigator Kiesel then stated during direct examination that this was not a case where DNA evidence would be possible to attain due to the "[t]imeframe" involved and the issue of "cross contamination," as A.K. had bathed in the time following the assault and "the DNA would be gone." And when questioned on cross-examination regarding why there was no examination by a sexual assault nurse examiner (SANE) requested in this case, Investigator Kiesel affirmed that they "could not do a rape kit . . . because of the delayed disclosure."

A prosecutor must base his or her argument on the evidence introduced at trial rather than on matters not in evidence. *State v. Mrza, supra*. While a prosecutor is entitled to draw reasonable inferences from the evidence in presenting his or her case or to argue against a defense theory, see *State v. Price, supra*, we conclude that the prosecution's statements concerning A.K.'s IUD as a reason for why no physical examination was conducted were not based upon the evidence adduced at trial. Investigator Kiesel did not testify that A.K.'s IUD played a role in the decision to not request a SANE examination, and the other evidence and testimony in the record does not suggest that an IUD would factor into such a decision. We therefore find that these statements by the prosecution were improper.

However, our inquiry does not end there, and we must determine whether the prosecutor's statements during closing argument prejudiced Addleman's right to a fair trial. Addleman claims that these "comments were extensive" and "highly influential on the conviction" as evidenced by a juror affidavit offered and received during the hearing on his motion for new trial. Brief for appellant at 35. The juror affidavit claims that the issues of whether A.K. had an IUD and the impact of such an IUD comprised a significant portion of the discussions during deliberation. However, as we previously described, these statements in the affidavit are not a proper consideration for this court's review. See § 27-606(2).

In considering the record before us, we are not persuaded that Addleman was prejudiced by the prosecution's statements during closing arguments. Despite Addleman's assertions to the

contrary, these statements comprised a minor and isolated part of the State's closing argument and rebuttal. We further note that the questions of whether A.K. had an IUD and the effect of that IUD on the feasibility of a SANE examination do not bear on the essential elements of third and first degree sexual assault of a child in this case, as it was undisputed that no SANE examination was requested or conducted. While the district court did not provide a specific curative instruction, the jury was instructed that the arguments presented by counsel during closing arguments were not to be treated as evidence. The prosecution's statement was also overshadowed by A.K.'s testimony concerning the sexual assault and Investigator Kiesel's testimony concerning the feasibility of any physical examination of A.K., which we have previously set forth above. To the extent that the State's references to an IUD were improper, we find that Addleman was not prejudiced so as to warrant a new trial.

(c) District Court's Response to Jury Request

Addleman claims that the district court's response to a question from the jury during deliberation without counsel present was improper. During deliberation, the jury submitted a question asking for "a copy of [A.K.'s] testimony if possible" and to see the videos of the forensic interviews. The videos of the forensic interviews were not received into evidence during trial. Without consulting the prosecution or Addleman's counsel, the district court issued a response to the jury that read: "You have all the evidence in the case, as it has been previously presented to you. Do you have a specific question about the evidence you are trying to resolve?" The jury did not respond to the court's inquiry and did not submit further questions to the court during deliberation. A copy of the jury's question and the district court's response was provided to the State and Addleman when the jury returned from deliberation to deliver its verdict.

The Nebraska Supreme Court has stated that "if it becomes necessary to give further instructions to the jury during deliberation, the proper practice is to call the jury into open court and to give any additional instructions in writing in the presence of the parties or their counsel." *State v. Hudson*, 277 Neb. 182, 189, 761 N.W.2d 536, 542 (2009). In a similar vein, Neb. Rev. Stat. § 25-1116 (Reissue 2016) provides:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel.

When a jury makes a request to rehear certain evidence, under the common-law rule, the trial court must discover the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002). If, after this careful exercise of discretion, the court decides to allow some repetition of the evidence, it can do so in open court in the presence of the parties or their counsel or under strictly controlled procedures of which the parties have been notified. *Id.*

We find that the district court's response to the jury in this case was neither an additional instruction nor a recitation of evidence for which the law commands the parties or counsel to be present. The jury inquired as to whether it could view the videos of the siblings' forensic interviews, however, those videos were not received as evidence. The court's response informed the jury that it had "all the evidence in the case, as it has been previously presented to you." The jury also requested to review A.K.'s testimony, and the court's response, in accord with *State v. Bao, supra*, asked the jury for further information with which the court could identify and isolate the jury's concern regarding evidence it wished to rehear. The court did not issue a substantive instruction to the jury outside the presence of counsel, and no piece of evidence was recited or otherwise presented again to the jury during deliberation. Accordingly, we cannot say the district court's response to the jury was improper because of the absence of the parties.

Further, as previously described, Addleman's claim that the district court's response to the jury's request caused him prejudice primarily relies upon the juror affidavit describing that the juror "felt as if [he] had to change [his] vote" of "not guilty" because of the court's response. As we have described, these statements fall within the purview of evidence deemed inadmissible by § 27-606(2), and we therefore will not consider them in our review for whether Addleman was prejudiced by the court's response to the jury's request.

Rather, our review is guided by the inquiry into whether the district court's communication with the jury had any tendency to influence the verdict. See *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002). If the record affirmatively shows or is silent as to the possibility of such prejudice, a new trial should be granted. See *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991). Reversal is not required if the record affirmatively shows that the communication had no tendency to influence the verdict. *State v. Jackson, supra*. Upon our review of the record, the court's response to the jury's inquiry did not have a tendency to influence the verdict. Despite Addleman's assertions to the contrary, the meaning of the court's response was clear: the jurors had all the evidence presented to them at trial for their consideration. Further, the court asked if there was a specific question about the evidence that the jury was trying to resolve. The jury did not respond and did not submit any further specific questions to the court during deliberation. The court's response was not a supplementary instruction and cannot reasonably be interpreted as attempting to coerce or intimidate the jury into reaching a verdict or otherwise be construed to have a tendency to improperly influence the verdict. The court did not abuse its discretion in denying Addleman's motion for new trial on this basis.

5. EXCESSIVE SENTENCE

Addleman further claims that the district court imposed excessive sentences. Addleman was convicted of one count of third degree sexual assault of a child, a Class IIIA felony, pursuant to § 28-320.01(3), and one count of first degree sexual assault of a child, a Class IB felony, pursuant to § 28-319.01(2). A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' post-release supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2020). However, post-release supervision is not applicable in this case because Addleman was also sentenced to imprisonment for a Class IB felony. See Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016). The

Class IB felony in this case is punishable by a mandatory minimum of 15 years' imprisonment and a maximum of life imprisonment. See §§ 28-105(1) and 28-319.01(2). See, also, *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015) (range of penalties for sexual assault of child in first degree, first offense, under § 28-319.01(2) is 15 years to life imprisonment).

However, the district court also found Addleman to be a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2016) and therefore counts III and V were subject to that statute. Section 29-2221(1) provides that, with the exception of crimes committed in violation of particular statutes, a defendant deemed to be a habitual criminal shall be punished by imprisonment for a mandatory minimum term of 10 years and a maximum term of 60 years. Accordingly, because Addleman was found to be a habitual criminal, his convictions were punishable by a mandatory minimum term of 10 years' and a maximum term of 60 years' imprisonment.

The district court sentenced Addleman to 10 to 20 years' imprisonment for count III, third degree sexual assault of a child, and stated that 10 years was the mandatory minimum. It sentenced him to 30 to 60 years' imprisonment for count V, first degree sexual assault of a child, and stated that 15 years was the mandatory minimum. At sentencing, the district court noted that the habitual criminal enhancement had no effect on the sentence in count V because that conviction was already subject to a mandatory minimum of 15 years' imprisonment. In other words, the 10-year mandatory minimum sentence for the habitual criminal enhancement was subsumed by the 15-year mandatory minimum sentence required by § 28-319.01(2). The court ordered that the sentence for count V was to be served consecutively to the sentence for count III. The court credited Addleman with 430 days for time previously served. Addleman's sentences are within the statutory ranges as provided under the statutes discussed above. We next consider whether the district court abused its discretion in the sentences ordered.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Addleman was 47 years old at the time of sentencing. His criminal history includes "Sexual Assault on Child (Class II Felony)" in 1994 (2 years' probation); "Theft (Class I Misdemeanor)" in 1997 ($200 fine plus court costs); "Disturbing the Peace" in 1999 ($150 fine plus court costs); two charges of "Disturbing the Peace" in 2001 (1 day in jail on one; $50 fine plus court costs on the other); one charge of "Procuring or Selling Alcohol to a Minor" in 2001 ($250 fine plus court costs); "Attempted 1st Degree Sexual Assault" in 2002 (3 to 4 years' imprisonment); "Attempted 1st Degree Sexual Assault on a Minor" in 2003 (3 to 5 years' imprisonment); "Disturbing the Peace" in 2009 (2 years' probation); two charges of "Attempted Failure of Sexual Offender to Register" in 2010 (concurrent sentences of 180 days in jail); a conviction in Wyoming for "Sex Offender-Fail to Register-1st Offense" in 2010 (16 to 36 months' imprisonment); "Sex Offender Registration Violation-Felony Second or Subsequent Offense" in 2014 (24 to 48 months' imprisonment); two charges of "Attempted Possession of a Controlled Substance" in 2017 (180 days in jail); and "Commit Child Abuse Intentional/No Injury" in 2017 (3 years' imprisonment).

His criminal history also includes convictions for driving under the influence and other traffic offenses.

The probation officer conducted a "Level of Service/Case Management Inventory" and assessed Addleman as having a "Very High" risk to reoffend. Addleman scored "very high risk/need" in the criminogenic risk factor domains for criminal history, companions, and antisocial pattern. He scored "high risk/need" in the domains for family/marital, leisure/recreation, alcohol/drug problem, and pro-criminal attitude and orientation. He scored "low risk/need" in the domain for education/employment. Addleman was further administered the "Vermont Assessment of Sex Offender Risk-2" and the "Sex Offender Treatment Intervention and Progress Scale." The presentence investigation report states that he was assessed as a high risk on both instruments.

At the sentencing hearing, Addleman's counsel highlighted the differences between Addleman's prior sexual assault convictions and the present case and additionally noted the issues that we have previously addressed in this opinion. Counsel emphasized Addleman's cooperation throughout the events of this case and requested that the court impose the minimum sentences permitted by the habitual criminal statute.

The district court stated that it had reviewed the presentence investigation report and considered the sentencing factors relevant to the facts of this case. The court noted that probation was "not an option" due to the mandatory minimum sentences of imprisonment stemming from the applicable statutes and further concluded that Addleman was "in need of treatment that can best be provided in a correctional setting." The district court then proceeded to sentence Addleman as set forth previously.

Addleman argues that the facts of this case show that he "should have received the statutory minimums on all charges." Brief for appellant at 43. In support of his argument, Addleman points towards "the discrepancies of testimony, lack of evidence, shoddy investigation, lack of identification and faulty photo array," and the undue weight given to his prior sexual assault convictions. Addleman also emphasizes that he "was truthful during his [presentence] investigation" and "[t]here were recommendations made in the [presentence investigation report] that [he] could have benefited from probationary programs and terms." *Id.* at 44. He asserts the district court "overlooked all of these factors and provided an excessive punishment." *Id.*

We have previously addressed the allegations Addleman raised regarding the proceedings and evidence in this case in full. Having considered the relevant factors in this case, we cannot say that the sentences imposed upon Addleman were an abuse of the district court's discretion.

## VI. CONCLUSION

For the reasons set forth above, we affirm Addleman's convictions and the sentences imposed by the district court.

AFFIRMED.